# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| MELISSA G.,[1] | ) | No. 18 CV 50218 |
| | ) | |
| *Plaintiff* | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW SAUL,[2] | ) | |
| Commissioner of Social Security. | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM AD OPINION ORDER

Plaintiff Melissa G. brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying her social security benefits. For the reasons below, Plaintiff's motion for summary judgment is granted in part and denied in part, the Commissioner's motion for summary judgment is denied, and the case is remanded to the Commissioner for proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff filed for disability benefits on March 26, 2015. She alleged a March 25, 2015 disability onset date caused by back injuries, depression, bipolar disorder, attention deficit hyperactivity disorder, dyslexia, degenerative arthritis in her lower back, polycystic ovary syndrome, and chronic migraines. R. 17, 68, 166, 193. She stopped working because of her impairments on March 25, 2015. Plaintiff's date last insured is June 30, 2016. R. 82. On November 5, 2015, Plaintiff, represented by counsel,[3] appeared for a hearing before an

---

[1] Plaintiff's last name has been redacted in accordance with Internal Operating Procedure 22.
[2] As of June 17, 2019, Andrew M. Saul is the new Commissioner of Social Security. Mr. Saul is substituted for Nancy A. Berryhill as defendant pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g).
[3] Plaintiff's counsel in this appeal represented Plaintiff at the hearing before the ALJ. R. 15.

Administrative Law Judge ("ALJ"). She was then twenty-two years old. At the hearing, she testified about her work history, education, and various impairments, including weakness and pain in her arms, lower back pain, feelings of pins and needles in her arms and legs, depression, mood swings, headaches, and difficulty concentrating. R. 37–48.

After the hearing, the ALJ followed the five-step evaluation process set forth by the Social Security Administration 20 C.F.R. § 404.1520(a)(4) and found that the Plaintiff was not disabled. R.15. The ALJ specifically found the following: (1) at Step One, that Plaintiff had not engaged in any substantial gainful activity between her onset date of March 25, 2015, through June 30, 2016, her date last insured, R. 17; (2) at Step Two, that Plaintiff had "the following severe impairments: obesity, osteophytosis of the thoracic spine, attention deficit hyperactivity disorder, disruptive mood dysregulation, borderline personality disorder, bipolar disorder, fibromyalgia, radial styloid tenosynovitis of the right thumb, hereditary and idiopathic neuropathy of the lower extremities, and bilateral cubital tunnel syndrome," R. 17; (3) at Step Three, that Plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment, *Id*.; (4) that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(h) except that she could not climb ladders, ropes, or scaffolds, could only occasionally balance, stoop, crawl, kneel crouch, or crawl, no more than frequent bilateral fingering and handling, only occasional exposure to heights and heavy moving machinery, and no commercial driving. R. 19. Plaintiff could understand, remember, and carry out only simple, routine, and repetitive tasks, could not meet hourly quotas, but could meet end of day quotas, and could use her judgment to perform "simple, work-related decisions" with no more than occasional interaction with coworkers and supervisors. The ALJ also found Plaintiff unable to perform coordinated tasks with coworkers

and limited her to brief and superficial public interaction, *Id*.; (5) at Step Four, the ALJ found that Plaintiff could not perform her past relevant work, R. 32; and (6) at Step Five, relying on the vocational expert ("VE") and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could work as a cleaner housekeeper (DOT 323.687-014), cafeteria attendant (DOT 311.677-010), or machine tender (DOT 556.685-038).

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The Commissioner's denial of disability is conclusive when supported by substantial evidence. *Id*.; *Skinner v. Astrue*, 487 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399–400 (1971). The court may not displace the ALJ's judgment by reconsidering facts and evidence, reweighing evidence, or by making independent credibility determinations. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Similarly, even if reasonable minds could differ on whether a claimant is disabled, a reviewing court must affirm the ALJ's decision if it is adequately supported. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

However, review of an ALJ's decision is not a rubber stamp of approval. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) ("mere scintilla" not substantial evidence). The court must critically review the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The ALJ's conclusion will not be affirmed where he fails to build a logical bridge between the evidence and his conclusion, even if evidence exists in the record to support that conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d

936, 940 (7th Cir. 2002) (where opinion is "so poorly articulated as to prevent meaningful review" the case must be remanded). Additionally, courts may not build a logical bridge for the ALJ. *Mason v. Colvin*, 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19–20 (N.D. Ill. Oct. 29, 2014).

## III. ANALYSIS

### A. Psychiatric Treatment

Plaintiff first argues the ALJ's discussion of her psychiatric treatment was minimal and cherry-picked from the record, thus her decision is not supported by substantial evidence and warrants remand. Dkt. 11 at 4–6. In support, Plaintiff relies on her hearing testimony that she suffered from mood swings, manic episodes,[4] and record evidence showing a history of anger and anger management treatment. R. 43, 920. Plaintiff claims these are "relevant to social functioning subcategory of the B criteria" of the mental health listings, but the ALJ failed to discuss them.[5] Plaintiff also relies on her hearing testimony that she attended college only part time and needed help from friends, her reports to doctors of suicidal thoughts and difficulty concentrating, and her reports of difficulty sleeping, racing thoughts, and depression. R. 38, 398, 882, 884, 896, 904. Plaintiff argues the ALJ ignored all of this evidence of her mental abilities and focused on her normal mental status examinations over abnormal ones, and, therefore, the

---

[4] Although Plaintiff also faults the ALJ for failing to explicitly describe her reports of manic episodes, manic-depressive episodes are included under the definition of a bipolar disorder diagnosis. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 123–32 (5th ed. 2013) (explaining that to be diagnosed with bipolar I disorder, patient must meet criteria for a manic episode); *Scott v. Astrue*, 647 F.3d 734, 738 (7th Cir. 2011) (bipolar disorder by definition includes manic and depressive episodes; ALJ's reliance on ME opinion that bipolar disorder was incorrectly diagnosed for lack of evidence of manic episodes erroneous where record indicated claimant suffered from manic episodes). The ALJ agreed with Plaintiff's bipolar diagnosis and found it to be a severe impairment, R. 19, thus by definition recognized that Plaintiff suffered from manic episodes. Plaintiff does not indicate how a description of her reported manic episodes would necessitate a different result or identify how her bipolar disorder is not accommodated for in the ALJ's RFC.

[5] Plaintiff does *not* argue that these facts show the ALJ's mental impairment Listing analysis is erroneous.

case should be remanded. *See* Dkt. 11 at 4–7 (citing *Yurt v. Colvin*, 758 F.3d 580, 859–60 (7th Cir. 2013); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010)).

This argument fails for three interrelated reasons. First, the ALJ accounted for Plaintiff's psychiatric impairments in her RFC analysis, and Plaintiff does not describe why those restrictions are not sufficient or what additional limitations the ALJ should have found in light of the evidence she identifies. The ALJ limited Plaintiff to only occasional interaction with coworkers and supervisors, brief and superficial public interaction, forbid tandem and coordinated tasks with others, and limited her to simple and repetitive tasks with no hourly production quotas. R. 18–19. These limitations directly relate to Plaintiff's abilities in concentration, persistence, and pace, coping issues, and ability to work with others, and Plaintiff does not explain why they are insufficient or what additional limitations are necessary. Nor does she argue the failure to address these facts caused error at any specific step of the ALJ's analysis; instead, she argues only generally that a remand is needed to specifically address the evidence she identifies. But by not explaining why this evidence should result in greater functional limitations, Plaintiff has not presented any developed argument warranting remand. *See, e.g.*, *Penrod v. Berryhill*, 900 F.3d 474, 478 (7th Cir. 2018); *Horr v. Berryhill*, 743 F. App'x 16, 10 (7th Cir. 2018); *Murphy v. Berryhill*, 727 F. App'x 202, 207 (7th Cir. 2018).

Second, Plaintiff's argument does precisely what it accuses the ALJ of doing: Plaintiff points to favorable facts that could support a disability finding while ignoring the unfavorable substantial evidence the ALJ relied on. To begin, it is undisputed that all four medical opinions of record unanimously conclude that Plaintiff is not disabled. *See* R. 67–80, 82–86. Two of those opinions, from non-examining State agency psychologists Dr. Cremerius and Dr. DiFonso, both opine Plaintiff is mildly restricted in daily living, moderately limited in maintaining social

functioning and maintaining concentration, persistence, or pace, and that Plaintiff had no episodes of decompensation. R. 71, 87. The ALJ explicitly gave great weight to these experts' findings in her opinion. R. 23. The ALJ's mental RFC is almost identical to the RFCs recommended by these two psychologists; indeed, the ALJ's RFC is more restrictive than the psychologists opined was necessary. *Compare* R. 19 *to* R. 75–76, 91–93. Plaintiff does not argue these opinions are flawed or outdated, that the ALJ improperly weighed these opinions, or that the ALJ should have sought another medical opinion to re-evaluate her psychiatric issues. Thus, the ALJ was entitled to rely on these opinions. *Rice v. Barnhart*, 384 F.3d 363, 370–71 (7th Cir. 2004) (ALJ entitled to rely on State agency consultative doctor's opinion in part because "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."); *see also Frazee v. Berryhill*, 733 F. App'x 831, 834 (7th Cir. 2018) ("The ALJ cannot be faulted for not 'playing doctor' and independently drawing a different [disability] conclusion from [the doctor's] tests."). The record contains no other medical opinions suggesting claimant is more mentally limited than the ALJ and these experts ultimately concluded, despite Plaintiff being represented by counsel before the ALJ and bearing the burden of proving her disability at the first Four Steps of the evaluation process. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (claimant represented by counsel at the administrative hearing "is presumed to have made her best case before the ALJ") (citations omitted).

Additionally, the ALJ did not ignore the psychiatric evidence favorable to Plaintiff. The ALJ identified Plaintiff's reports of suicidal thoughts, but also noted that these depression symptoms had improved with treatment. R. 20, 351. She explained that Plaintiff's bipolar disorder was noted as controlled with medication by June 24, 2016. R. 22, 420. She also explained, for example, how Plaintiff's ability to attend and complete college during the time she

claimed disability and relatively normal mental status exams did not fully substantiate her claims of disabling mental impairments. R. 21–23, 369, 371, 398, 902. She discussed the findings of consultative psychologist Dr. Peter Thomas's examination, where Plaintiff reported quick acceleration to anger and severe depression, but presented "with a dramatic style, often elaborating extensively about problems" and "appeared to be inconsistent and her compliance with medical treatment[] and her behavior suggested she had used discussion of suicidal ideation in the past to garner attention." R. 21, 369–71. The ALJ discussed, albeit briefly, Plaintiff's suicidal and hopeless thoughts and poor coping skills, but mentioned Plaintiff's good relationship with her friends, intact cognition, normal thought content, normal insight, good judgment, intact memory, and otherwise relatively normal mental status examinations. R. 21, 397–98, 892, 900–03. The ALJ's discussion of Plaintiff's mental impairments, coupled with the medical expert reports opining that Plaintiff was not disabled as a result of those impairments, constitutes substantial evidence, and the ALJ was entitled to rely on it. *Richardson*, 402 U.S. at 399–400.

Third, the Court agrees with the Commissioner that Plaintiff essentially invites the Court to revisit the mental impairment evidence, ignore the weight the ALJ gave to the substantial evidence she relied on when formulating her opinion, and reweigh the evidence in Plaintiff's favor. The Court declines the invitation, as it is required to do. *Overman*, 546 F.3d at 462; *Elder*, 529 F.3d at 413. The ALJ relied on substantial evidence in making her disability determination, minimally addressed the evidence suggesting Plaintiff's disability, and accommodated Plaintiff's mental impairments in her RFC consistent with every medical opinion on record. The Court will not remand solely based on evidence identified by Plaintiff that could theoretically support a finding of psychiatric disability because the ALJ's determination that she is not disabled is

supported by substantial evidence and the ALJ has minimally articulated her reasoning. *Simila*, 573 F.3d at 513; *Rice*, 384 F.3d at 371 (ALJ need not discuss every piece of evidence in her opinion).

## B. Chronic Pain Treatment

Next, Plaintiff argues the ALJ erred in her RFC determination when she discounted Plaintiff's subjective complaints of pain caused by her fibromyalgia and polyneuropathy. Dkt. 11 at 8. Specifically, she claims the ALJ improperly discredited her allegations of chronic pain. Dkt. 11 at 8–9; Dkt. 20 at 2–3.

The Court agrees. When evaluating a claimant's subjective symptoms, an ALJ should consider the medications taken, functional limitations, allegations of pain, aggravating factors, objective medical evidence, and daily activities. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); 20 C.F.R. § 404.1529(c)(3); SSR 16-3p. Because "the ALJ is in the best position to determine the credibility of a witness," courts review an ALJ's credibility determination with deference. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). A reviewing court will reverse an ALJ's credibility determination if it is so lacking in analysis or support that it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "[O]nce the ALJ has found that the Claimant suffers from impairments that could reasonably cause her symptoms, [s]he may not disregard her allegations just because they are not fully supported by the medical evidence." *Tenhove v. Colvin*, 927 F. Supp. 2d 557, 574 (E.D. Wis. 2013) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Finally, "[a]n erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

After summarizing and explaining the medical record, the ALJ analyzed Plaintiff's subjective complaints of pain in the following two paragraphs:

> As summarized above, the medical evidence of record is not supportive of the claimant's allegations of disabling symptomatology. While the claimant has reported issues with generalized pain all over the body, diagnostic imaging revealed only mild or no objective medical findings. On physical examinations, no issues with ambulation or muscle weakness were noted, either. Furthermore, she has described her pain as "uncomfortable" and not debilitating. In fact, treatment records through April 2015 focused primarily on complaints of headaches, which were treated only with over-the-counter medication, and she herself described them as only mild in nature. She was not referred for pain management and did not visit with an orthopedist. As for her mental health impairments, the claimant did not begin psychotherapy treatment until March 2016, despite repeated referrals in the past, suggesting that her symptoms were not as severe as reported. She has not presented to the emergency room due to exacerbation of symptoms even while not in treatment. The absence of objective medical findings and conservative treatment does not support the claimant's allegations of not being able to function in a competitive work environment.

> Furthermore, the claimant's reports through the evidence of record are not consistent. At the hearing, she testified to not being able to clean or do laundry, which is inconsistent with her own Function Report indicating that she does laundry, removing snow, washing dishes, mowing the lawn, and cleaning [sic]. Furthermore, the claimant was able to obtain her associates degree in May 2016, indicating that she was able to complete homework and tests as a student. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 22–23. The ALJ went on to credit the opinions of the State Agency medical consultants with "the greatest weight." R. 23.

Plaintiff attacks two of the ALJ's justifications for discounting her subjective complaints of pain. First, she argues the ALJ found there was "no proof of Plaintiff's pain." Dkt. 11 at 8. The Court notes that, while the ALJ did observe that "the medical evidence of record is not supportive of claimant's allegations of disabling symptomology" and that imaging to determine

the source of Plaintiff's reports of generalized pain revealed "mild or no objective medical findings," R. 22, she did not conclude that *no* proof existed. After all, the ALJ concluded that Plaintiff suffered from a variety of severe impairments, including both fibromyalgia and hereditary and idiopathic neuropathy of the lower extremities. R. 17. However, the ALJ's statement that the objective tests revealed "only mild or no objective medical findings," without more explanation, is another way of saying that she disregarded Plaintiff's subjective complaints of pain only because they are not fully consistent with the objective medical evidence. This is an improper basis for finding Plaintiff not credible because the ALJ already found impairments (fibromyalgia and neuropathy) which *could* cause the symptoms Plaintiff alleged. *Tenhove*, 927 F.Supp.2d at 574; *Rudder v. Colvin*, 11 CV 50286, 2014 U.S. Dist. LEXIS 103654, at *34–35 (N.D. Ill. July 30, 2014). And the medical records show Plaintiff did treat with a rheumatologist for her chronic pain caused by neuropathy and fibromyalgia from December 2015 through September 2016. R. 438–86. During this treatment Plaintiff reported numbness and throbbing, achy, burning, and sharp pains all aggravated by activities of daily living, which at least partially corroborates her allegations of chronic pain.

Second and relatedly, Plaintiff takes issue with the ALJ's statement that Plaintiff had not been referred to treatment for her chronic pain conditions. Plaintiff argues the ALJ improperly suggests that she had not pursued treatment for her pain, that the ALJ did not explore her reasons for failing to pursue certain treatment options, and that she, in fact treated with a rheumatologist for her fibromyalgia and neuropathy. *See, e.g.*, R. 438–68. The Court agrees. The record shows Dr. Gorham referred Plaintiff for an evaluation of fibromyalgia, R. 462, so it is unclear what the ALJ was referring to when she stated Plaintiff had never been referred for pain treatment. This ambiguity is compounded by the fact that the ALJ cited positive objective findings of

polyneuropathy and cubital tunnel syndrome and the treatment notes from Plaintiff's follow-up fibromyalgia appointments throughout her synopsis of the medical record. R. 22, 448, 469, 472. Additionally, the ALJ noted the exact page of the record indicating Plaintiff was referred for a fibromyalgia evaluation. R. 22, 462. Thus, failure to seek treatment is not a proper basis for finding Plaintiff not credible because she was referred to pain treatment for her fibromyalgia and neuropathy symptoms.

The Commissioner argues the ALJ provided enough other valid reasons to justify her determination and that the ALJ's credibility determination is not otherwise "patently wrong." The ALJ pointed out that during a follow up visit with her rheumatologist on March 29, 2016, Plaintiff described her chronic pain as "uncomfortable" rather than debilitating. R. 22, 445. The ALJ also pointed out an inconsistency in Plaintiff's reports of disabling pain: although Plaintiff testified at the hearing that she could not clean or do laundry because of her impairments, Plaintiff had indicated in her disability Functional Report that she could carry out activities of daily living, including doing the laundry, removing snow, washing dishes, mowing the lawn, and cleaning. R. 22, 45–47, 75, 89. The ALJ also cited Plaintiff's ability to attend classes and obtain an associate's degree in May 2016 as reason to disbelieve her claims of disabling body-wide pain.[6] R. 38 (hearing testimony).

This argument is not enough to save the flawed credibility analysis. The record contains much evidence that can be used to support a finding that Plaintiff is not credible. Even a reading of the cold record leaves one with the distinct impression that Plaintiff is not credible. However, logically, the ALJ may not deny Plaintiff ever sought chronic pain treatment on the one hand while also citing one example from the treatment record evincing her chronic pain treatment

---

[6] In an unrelated section of her brief, Plaintiff points out the ALJ never explicitly stated that Plaintiff attended school part time (three classes per semester) and that friends helped her. Dkt. 11 at 5.

wherein Plaintiff described her pain as "uncomfortable" as a reason to justify her credibility determination. As previously indicated, Plaintiff did seek treatment, took medication for her chronic pain, and reported chronic pain symptoms which seemingly evince consistent reports of chronic pain.[7] *See, e.g.*, *Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018). The ALJ's erroneous reliance on Plaintiff's supposed lack of pain treatment, while simultaneously citing one page of the record from Plaintiff's chronic pain treatment to find her not credible, is not ameliorated by the two other inconsistencies the ALJ cited. By failing to accurately address Plaintiff's chronic pain treatment, the ALJ failed to build a logical bridge to her conclusion that Plaintiff's allegations of chronic physical pain were not credible. Remand is required to allow the ALJ to revisit her credibility finding and justify it with specific reasons supported by the record. *See, e.g.*, *Rudder*, 2014 U.S. Dist. LEXIS 103654, at *35–36.

## C. Listing 11.02(B)

A remand is required to address the credibility issue. But the Court will address Plaintiff's final argument—an argument that seems to place an extraordinary burden on the ALJ while simultaneously absolving Plaintiff's counsel of proving her client is disabled.

Plaintiff argues the ALJ erred at Step Three by failing to address her migraines under Listing 11.02, the epilepsy listing. Courts routinely apply the epilepsy Listing 11.02 when analyzing a claimant's severe migraines because there is no separate listing for migraines or headaches. *See Cooper v. Berryhill*, 244 F. Supp. 3d 824, 829 (S.D. Ind. 2017); *see also* SSR 19-4p. A claimant bears the burden to show that her impairments meet a listing and that her impairments satisfy all criteria of the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir.

---

[7] Indeed, at the hearing, Plaintiff testified he fibromyalgia causes widespread pain, migraines, cramps, numbness and tingling, which is "uncomfortable and makes everything harder." R. 52. Thus, Plaintiff's description of her fibromyalgia symptoms as "uncomfortable" seems consistent with the symptoms she reported to her doctors.

2006). "In considering whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (internal quotations omitted); *see also* SSR 17-2p.

In this case, despite some record evidence indicating Plaintiff suffered from intermittent migraines of varying severity as briefly discussed below, the ALJ did not specifically cite or discuss Listing 11.02 at any point in her decision. Additionally, although the two ME reports on record discussing Plaintiff's mental impairments indicate that none of Plaintiff's impairments equaled any listing, neither of those reports explicitly considered Listing 11.02. R. 71–72, 87–89 (examining Listings 12.02, 12.04, and 12.08). In this respect, the ALJ's analysis regarding Listing 11.02 is perfunctory because the ALJ did not cite to let alone discuss the listing.[8] *Minnick*, 775 F.3d at 935; *Rice*, 384 F.3d at 369; *Horner v. Berryhill*, 17 C 7586, 2018 U.S. Dist. LEXIS 138660, at *4–6 (N.D. Ill. Aug. 16, 2018).

However, the Commissioner argues in response that any error the ALJ may have made regarding Listing 11.02 is harmless because Plaintiff has not met her burden to show that her

---

[8] The Court notes that Plaintiff's counsel represented Plaintiff at the hearing before the ALJ, and at no point before or during that hearing did counsel mention the possibility that Plaintiff's migraines might meet or equal Listing 11.02. Indeed, a review of the record reveals that Plaintiff's counsel raises this argument for the first time before this Court. The Court wonders how this could be the case. At Step Three, it is Plaintiff's burden to prove that her impairments satisfy all criteria of a listing. *Ribaudo*, 458 F.3d at 583. Additionally, counsel presumably reviewed the medical record before representing Plaintiff at the administrative hearing. Part of this record, the ME's reports, identify which listings the MEs considered when formulating their opinion that Plaintiff had not met a listing. As mentioned previously, these reports show that the MEs did not explicitly consider Listing 11.02. *See* R. 71–72, 87–89. If counsel believed Plaintiff would be found disabled at Step Three because of her migraines under Listing 11.02, counsel had the opportunity to and should have raised that exact issue to the ALJ to be addressed in the first instance, especially in light of the ME reports showing Listing 11.02 was not considered. Thus, this case represents yet another example of an issue that should have been brought to the ALJ's attention, but instead counsel has seemingly "sav[ed] their argument[] for this Court." *Jody W. v. Berryhill*, 17 CV 50290, 2019 U.S. Dist. LEXIS 25441, at *13–14 (N.D. Ill. Feb. 15, 2019). Counsel should bring these types of issues to the ALJ's attention at the administrative hearing.

impairment could have equaled the listing. Dkt. 19 at 1–3. This Court has previously identified

"a limited opening for the harmless error doctrine" as applied to perfunctory listing analyses.

*Zellweger v. Berryhill*, 354 F. Supp. 921, 928 (N.D. Il. 2018) (internal quotation omitted).

Therefore, if the Court "can predict with great confidence that the result on remand would be the

same," the ALJ's error at Step Three is harmless. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th

Cir. 2013).

Plaintiff's opening brief neither identifies which part of Listing 11.02 her migraines may

have equaled nor cites to evidence to support such an argument. To illustrate, Listing 11.02 reads

as follows:

> 11.02 Epilepsy, documented by a detailed description of a typical seizure and
> characterized by A, B, C, or D:
>
>> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once
>> a month for at least 3 consecutive months (see 11.00H4) despite adherence
>> to prescribed treatment (see 11.00C); or
>>
>> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for
>> at least 3 consecutive months (see 11.00H4) despite adherence to prescribed
>> treatment (see 11.00C); or
>>
>> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once
>> every 2 months for at least 4 consecutive months (see 11.00H4) despite
>> adherence to prescribed treatment (see 11.00C); and a marked limitation in
>> one of the following:
>>
>>> 1. Physical functioning (see 11.00G3a); or
>>>
>>> 2. Understanding, remembering, or applying information (see
>>> 11.00G3b(i)); or
>>>
>>> 3. Interacting with others (see 11.00G3b(ii)); or
>>>
>>> 4. Concentrating, persisting, or maintaining pace (see
>>> 11.00G3b(iii)); or
>>>
>>> 5. Adapting or managing oneself (see 11.00G3b(iv)); or

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (see 11.00G3a); or

    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

    3. Interacting with others (see 11.00G3b(ii)); or

    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

    5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, App'x 1 pt. A2, § 11.02. If a claimant's migraines satisfy the either the A, B, C, or D Criteria, the claimant satisfies Listing 11.02 and is considered disabled at Step Three.

Rather than address Criteria A, B, C, or D, Plaintiff states in her opening brief the general proposition that migraine impairments can be evaluated under Listing 11.02, cites one page of the record indicating "the frequency of plaintiff's migraines and the severity,"[9] then concludes that the ALJ's failure to address Listing 11.02 is perfunctory and warrants remand. Dkt. 11 at 7–8. This undeveloped and conclusory argument does not attempt to articulate how or why any record evidence met any of Listing 11.02's requirements and substantially forced the Commissioner to address each possible application of the record to Listing 11.02. *See* Dkt. 19 at 1–3. Only in her reply brief does Plaintiff argue that her migraines most closely resemble "dyscognitive seizures occurring at least once a week for at least three consecutive months

---

[9] The one page cited by Plaintiff is a December 3, 2015 treatment note from her neurologist, Dr. Royce, describing Plaintiff's complaints of daily migraines without aura and associated symptoms. R. 424. However, Plaintiff does not go on to articulate how this page of the record shows her impairment meets any of Listing 11.02's requirements.

despite adherence to treatment," or the B Criteria.[10] Because Plaintiff limits her argument to

Listing 11.02(B) in her reply brief, and because she otherwise did not provide any argument as to

the other listing criteria, the Court limits its review to the Listing 11.02(B) criteria. *See Crespo v.*

*Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments that are

unsupported by pertinent authority are waived.").

      This case is close. It is difficult to remand under these circumstances. This case is another

example of the difficult position ALJ's are placed in because of the SSA's own rules and

regulations. However, in this case, the Court cannot predict "with great confidence" that the ALJ

would reach the same result if it were remanded on this issue because the evidence *could* show

that Plaintiff's impairments equaled Listing 11.02(B) sometime before her date last insured, June

30, 2016. *Schomas*, 732 F.3d at 707. The relevant evidence shows the following: Plaintiff first

complained of and was prescribed medical treatment for her migraines during a visit with Dr.

Gorham on July 10, 2014. The treatment note reflects her complaints of having "a headache for 5

months" with daily pain on a scale of three out of ten in terms of severity and typically lasting all

day. R. 354. She was referred to a neurologist, Dr. Jeffrey Royce, and prescribed prednisone and

cyclobenzaprine. R. 355. The note also suggested a prescription for Topamax if the headaches

had not improved in two weeks. *Id*. On July 24, 2014, Plaintiff met with Dr. Gorham again, who

noted that her prescribed medications had "helped but not resolved" her migraine symptoms. R.

350. Dr. Gorham prescribed Topamax for Plaintiff's migraines and noted that she would refer

Plaintiff to Dr. Royce if she did not feel better. R. 351.

      At Plaintiff's first appointment with Dr. Royce on July 25, 2014, Plaintiff again

complained of headaches, this time "life long," with daily pain on a scale of six out of ten in

---

[10] Plaintiff erroneously attributes this language to Criteria C, Dkt. 20 at 1, though it comes from Criteria B. 20 C.F.R. Part 404, Subpart P, App'x 1 pt. A2, § 11.02 (B).

terms of severity and typically lasting "most days." R. 309. She was prescribed Topamax "with antidepressant therapy (Effexor) and add Latuda 40 mg due to high frequency of pain." R. 310. Plaintiff next met with Dr. Gorham on August 25, 2014, who noted Topamax made Plaintiff's headaches slightly better but that Plaintiff still reported "lots of pain issue[s]." R. 346. Dr. Gorham instructed Plaintiff to continue her Topamax regimen and follow up with Dr. Royce in approximately three weeks. R. 346–47. However, the record reflects Plaintiff's next follow-up visit with Dr. Royce occurred much later, on February 10, 2015. R. 304. Her migraines were improving, and Plaintiff was noted as being compliant with treatment. She complained of severe headaches with symptoms of photophobia and sonophobia occurring twice a month lasting three days each time. *Id*.

Plaintiff had a follow-up visit at Dr. Royce's office on April 10, 2015. At this visit, Plaintiff indicated that her migraines were occurring "intermittently." She was noted as being compliant with treatment. Her headaches were occurring once per month with a severity of mild. Plaintiff identified having suffered only one severe migraine since her last visit on February 10, 2015. R. 432. At Plaintiff's next visit on June 29, 2015, she felt her condition was worsening. R. 429. However, she maintained that her headaches were still occurring once per month with a severity of mild. She had stopped taking her medications as she was unable to afford them. *Id*. The treatment plan was to have Plaintiff resume medications. R. 431.

At another follow-up on September 24, 2015, Plaintiff presented with a headache of seven out of ten in terms of severity and indicated her condition was worsening, with severe headaches occurring five times per month. She was noted as compliant with treatment, reported taking Tylenol and ibuprofen to alleviate her symptoms only once,[11] and reportedly tried Maxalt,

---

[11] At the time, Plaintiff was prescribed Tylenol, to be taken once every six hours "as needed for pain." R. 426.

but it wasn't effective. R. 426–27. She presented with a severe headache at the appointment and was given acute treatment, orphenadrine and Toradol, "which brought the headache to a 4/10 [on the pain scale]." R. 428. Along with her previous prescription for Topamax, she was prescribed orphenadrine and Toradol that same day. *Id*. At her next follow up on December 3, 2015, her clinical course was "stable." R. 424. Plaintiff was compliant with treatment and her headaches were "gone." *Id*. She still complained of photophobia, phonophobia, and nausea. *Id*. By her next follow up on March 3, 2016, Plaintiff reported having less than one migraine of mild severity per month. Her clinical course was noted as "improving." R. 421. By this date she was no longer taking Topamax.[12] R. 421–22. She took Tylenol and water and slept for relief. She was compliant with the treatment. *Id*.

On June 24, 2016, her clinical course was "unchanged." She was compliant with treatment. She reported daily mild headaches, but that "she ha[d] not had a severe headache or what she would consider a migraine in about one year." R. 419. The headaches were "treated with nothing, with relief." *Id*. The last treatment note in the record from a visit on August 26, 2016 indicates Plaintiff's clinical course was "worsening." R. 416. Plaintiff complained of suffering from a "mild" headache for the previous seven days. At the time, the headaches were being treated with water and sleep, without relief. R. *Id*. The record contains no other neurologist reports relating to Plaintiff's migraine treatments after this date.

Again, Plaintiff's migraines meet Listing 11.02(B) if they occur once a week for three consecutive months despite adherence to prescribed treatment. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 pt. A2, § 11.02 (B). In Plaintiff's case, the earlier treatment records indicate her

---

[12] Apparently, the prescription ran out on February 8, 2016. R. 429. Topamax does not appear as one of Plaintiff's prescribed medications from the date of the appointment on March 3, 2016 onward. R.416, 419, 421–22.

migraines may have equaled Listing 11.02(B)'s requirements. For the approximately six months between July 25, 2014, and February 10, 2015, Plaintiff was complying with treatment and she was experiencing severe migraines despite adherence to prescribed treatment. The reported frequency of these migraines during this timeframe ranged from "daily" to twice per month but lasting for three days, which could be read as occurring six days out of the month.[13] Assuming the severity and symptoms of the migraines are comparable to "dyscognitive seizures" as described by the regulations,[14] it is possible that Plaintiff's migraines could have met these requirements during this timeframe.

This is not to say these records definitively show Plaintiff's migraines equal 11.02(B)'s requirements: it is equally possible that Plaintiff's migraines do not meet the severity requirement or are not comparable to dyscognitive seizures, or that inconsistencies in Plaintiff's reports to her doctor regarding the nature of her migraines could call into question their reported severity.[15] However, this Court may not answer these questions in the first instance and is ill-prepared to make medical equivalency determinations between reportedly severe migraines and dyscognitive seizures, as such determinations are more appropriately reserved for medical experts. *Minnick*, 775 F.3d at 935 (listing equivalency requires expert opinion). This is

---

[13] Indeed, dyscognitive seizures are counted in 24-hour increments. 20 C.F.R. Part 404, Subpart P, App'x 1 pt. A2, § 11.00(H)(4)(a). Therefore, it is possible that migraines lasting more than 24 hours would be considered two separate occurrences.

[14] "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure (see 11.00H1a)." 20 C.F.R. Part 404, Subpart P, App'x 1 pt. A2, § 11.00(H)(1)(b).

[15] For instance, during her first doctor's visit on July 10, 2014, Plaintiff reported suffering seemingly mild headaches (three out of ten in severity) regularly for the past five months. However, by July 25, 2014, she reported to another doctor that she was having severe headaches (six out of ten in severity) almost daily and for her entire life. R. 309, 354. Additionally, her treatment records starting on April 10, 2015 indicate that Plaintiff's treatments were working and seemingly brought the frequency of her migraines below 11.02(B)'s requirements.

particularly true here because the ALJ and the experts who opined Plaintiff did not meet the listings never explicitly addressed Listing 11.02(B), thus the Court has no basis to conclude whether Plaintiff's migraines met or equaled this listing.[16] *Id.*; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("the ALJ never consulted a medical expert regarding whether the listing was equaled").

Additionally, although the records relating to Plaintiff's migraines seemingly do not make a strong case that she equaled Listing 11.02(B), the ALJ is not excused from identifying relevant listings and building a logical bridge from the record evidence to her conclusions. *Jody W.*, 2019 U.S. Dist. LEXIS 25441, at *13. The ALJ did not do that here despite record evidence suggesting a severe migraine issue. Thus, remand is required to allow the ALJ and the necessary medical expert to evaluate the medical record to determine whether the evidence of Plaintiff's migraines show she met or equaled Listing 11.02(B) sometime before her date last insured. *See, e.g.*, *Minnick*, 935–36; *Snow v. Berryhill*, 18-CV-434 JD, 2019 U.S. Dist. LEXIS 71368, at *8–15 (N.D. Ill. Apr. 26, 2019). Again, the Court makes no determination as to whether Plaintiff's impairments are equivalent to the Listing. This Court's ruling is very narrow. This Court is only finding that the record contains sufficient evidence that prevents it from finding harmless error.

---

[16] The Commissioner argues the ALJ was entitled to rely on the medical expert reports and provide little additional explanation when no contradictory evidence exists in the record. *Ribaudo*, 458 F.3d at 584. However, as discussed above, there is *some* contradictory evidence that *might* equal the listing's requirements. Further, the experts in this case never evaluated Listing 11.02(B) and made no conclusions about that listing. Thus, the ALJ was not entitled to summarily rely on the consultative experts' reports on this issue.

### IV. CONCLUSION

For those reasons, Plaintiff's motion for summary judgment is granted in part and denied in part, the Commissioner's motion is denied, and the case is remanded for proceedings consistent with this opinion.

Date:   September 13, 2019                    By:   _____
                                                    Iain D. Johnston
                                                    United States Magistrate Judge